[Civ. No. 6584. Second Appellate District, Division Two.—July 17, 1931.]

M. A. KOFFMAN et al., Appellants, v. WILLIAM G. DeKOCH et al., Respondents.

Culbert L. Olson for Appellants.

Bauer, Wright & MacDonald, Bauer, MacDonald, Schultheis & Pettit, George W. Nilsson and Harold H. Coyle for Respondents.

THOMPSON (IRA F.), J.—This is an appeal from the judgment entered in favor of the defendants. The litigation arose out of the following situation. On November 9th the predecessor in interest of the respondents entered into a contract with the Standard Oil Company for the sale of oil which the former was producing from a well in the Signal Hill field. The material provisions of that contract read as follows: ''The first party (respondents' predecessor) hereby sells and agrees to deliver to the second party during the period of five years from the date hereof, unless this contract is sooner terminated as herein provided the total amount of Crude Petroleum Oil, subject to the maximum limit herein set forth, *of a gravity of not less than fourteen degrees A. P. I.,* at a temperature of sixty (60) degrees Fahrenheit, produced by the first party from its property situate in the Signal Hill Oil Field (here follows legal description).''

''The first party agrees that it will operate its property and wells in good faith and with reasonable diligence and endeavor to deliver the maximum monthly quantity expressed herein during the period of this contract.''

''Oil considered as a delivery under this contract must be free from water, sand and other foreign substance, as ascertained from the 'Gasoline Test' by means of the centrifugal machine, but should said test fail to prove the existence in said oil of more than three (3) per cent of water, sand and other foreign substance, the second party will accept the oil and make deduction for all water, sand and other foreign substances determined by the test hereinbefore mentioned . . .

''If at any time oil offered for delivery hereunder shall be of a lower gravity than the minimum gravity hereinbefore specified, second party, at its option may accept said oil and pay for said oil at the lowest price at that time effective hereunder, or if at any time oil offered for delivery hereunder shall contain more than Three (3) per cent of water, sand or other foreign substances, as determined by said test . . . , but no such acceptance shall be deemed a waiver of second party's right at any time thereafter to require deliveries hereunder strictly in accordance with the conditions herein specified, . . . ''

Some time prior to June 28, 1924, the well of defendants' predecessor in interest produced oil containing considerably more than three per cent of water and foreign substance, and for that reason the Standard Oil Company refused to accept it under the contract. On November 20, 1925, the plaintiff M. A. Koffman entered into a contract with defendants' predecessor, subject, however, as it is agreed, to the Standard Oil contract, the material portions of which read as follows:

"[T]he party of the first part (defendants' predecessor) hereby agrees to sell and deliver to the party of the second part, and the party of the second part hereby agrees to purchase and receive from the party of the first part, during a period of three (3) years commencing November 20, 1925, ending November 20, 1928, and during each and every calendar month thereafter until cancelled by a six months written notice of cancellation by either party to the other, the total amount of Crude Petroleum Oil, subject to the maximum limits hereinafter set forth, of a gravity *not less than fourteen (14) degrees* Beaume at a temperature of sixty (60) degrees Fahrenheit, produced by first party from (here follows description)."

"Deduction shall be made from the gross quantities of oil apparently contained in any delivery of oil *for all sand, water, emulsion, and other foreign substances contained in said oil, based upon a centrifugal test* made as follows (here follows description of centrifugal test of a sample of oil)."

The contract provides that second party shall pay "the price as publicly offered by the Standard Oil Company of California, at dates of delivery during the life of this contract to other producers in the Signal Hill Field *for oil of like gravity and quality as the oil delivered hereunder;* and whenever and as often as the prices offered by said Standard Oil Company at any time during the period of this contract to such other producers in the Signal Hill Field *for oils of like gravity and quality as the oil delivered hereunder shall advance or decline . . . "*

Deliveries were made to the plaintiffs under the contract until March 1, 1927, and during this time the gravity of the production from the well was considerably under the required fourteen degrees and in fact less than ten. Prior to March 1, 1927, the output contained sixty per cent to

sixty-five per cent water and had been turned into settling tanks and after some of the water had descended to the bottom, was drained off. However, during February of that year the defendants' predecessor installed a dehydrating machine, the process of which consists in steam heating the crude product under pressure to reduce its viscosity, whereupon a current of electricity is passed through it (also under pressure) which charge it is said causes the water particles to migrate and coalesce and thus settle out more readily.

After the dehydrator was installed the Standard Oil Company said it wanted the oil thus treated and from which the water was removed, under its contract. Consequently defendants' predecessor refused to deliver to plaintiffs who brought this action to recover damages for the refusal.

The contention of appellants may be fairly stated in this language, that the respondents (we shall use that designation hereafter to identify defendants' predecessor as well as the defendants themselves, who we may presume for the purpose hereof, assumed the liability) had no right to eliminate the water, sand and other foreign substances by passing it through the dehydrating plant. We have been to considerable pains to set forth the material portions of the two contracts because taken together they demonstrate the untenable nature of the argument of appellants. The two are very much alike and it is apparent therefrom that there was no enforceable contract for oil of a gravity under fourteen degrees Beaume. It is also to be noted that both contracts made deductions for water, sand and other foreign substances even though it were sufficient as to its gravity. Therefore, before the oil was salable, some process had to be made use of to reduce the water content. In view of the fact that the production as it came from the well was not the subject of either contract, i. e., was not of sufficient gravity, we entertain no doubt that respondents were entitled to make use of the most efficient method possible to make it a salable product, and one to be sold at the smallest deduction for foreign substances. The view we entertain makes further discussion unnecessary.

Judgment affirmed.

Works, P. J., and Archbald, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 14, 1931.